UPON REHEARING EN BANC
PETTY, Judge.
Roger Lee Stevens appeals from his convictions for robbery, conspiracy to commit robbery, malicious bodily injury, two counts of murder, and several counts of using a firearm in the commission of various felonies. Before a panel of this Court, Stevens argued that the trial court erroneously denied his motion to suppress incriminating statements he made to police during a custodial interrogation after he requested counsel. Stevens contended that the police should have ceased questioning him because he claims to have unambiguously and unequivocally invoked his right to have counsel present during custodial interrogation as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
In an unpublished opinion, a divided panel of this Court reversed Stevens’ convictions and remanded for a new trial. See Stevens v. Commonwealth, No. 0266-09-3, 2010 WL 2482325, at *5, 2010 Va.App. LEXIS 244, at *18 (Va. Ct.App. June 22, 2010). We subsequently granted the Commonwealth’s petition for rehearing en banc and stayed the panel decision.[1] On rehearing en banc, we hold that Stevens’ state *569 ment was ambiguous because the circumstances leading up to Stevens’ statement made it unclear whether Stevens had requested the presence of an attorney during custodial interrogation, or whether he had simply expressed his desire to have an attorney appointed to represent him at trial. Because of this ambiguity, we conclude that the police were permitted to ask Stevens limited questions solely for the purpose of clarifying the statement. Accordingly, we hold that the police did not violate Stevens’ right to counsel under Miranda, and, therefore, we affirm his convictions.
I. BACKGROUND
On July 22, 2008, the appellant, Roger Lee Stevens, was arrested for his involvement in a deadly shooting that occurred during a drug transaction. After his arrest, Investigators Chaney and Nicholson of the Pittsylvania County Sheriffs Department questioned Stevens at a police station in Chat-ham, Virginia. They began the interrogation by carefully reading Stevens his Miranda rights. Stevens waived those rights[2] and answered the investigators’ questions for approximately two hours. During this time, Stevens never asked for counsel. After this session concluded, Stevens was transferred to an unidentified jail; he did not remain in Chatham because of a need to keep him separate from another person in custody at that location.
Apparently, the magistrate before whom Stevens had appeared during the night had erroneously ordered Stevens to be transported to the juvenile and domestic relations district court for his original appearance and appointment of counsel.[3] *570 Based on the magistrate’s order, authorities transferred Stevens to a holding cell at that court even though the proper court for this advisement was the general district court, which was not sitting that day. Because of this mix-up, the advisement was continued until the next day that the general district court was to sit.
When he arrived for work that morning, Investigator Chaney learned that Stevens wanted to talk with him again. Accordingly, Chaney went to the holding cell and engaged in a “basic conversation” with Stevens. Stevens asked Chaney if he could leave the cell to see his child at home. Chaney explained that Stevens could not leave because he was in police custody for several serious crimes. He further explained that he would come visit Stevens later to talk with him some more.
Later that day, Chaney and Nicholson had Stevens returned to the police department so they could speak with him further. Their conversation began as follows[4]:
Chaney: You wanna, you want to talk to us some more?
Stevens: Ya’ll want to talk to me or something?
Chaney: Yeah. You want to talk to us?
Stevens: Ya’ll want to talk to me? I ain’t doing nothing [inaudible] sitting.
Chaney: Well reason we ask is cause we brought you back over that, this morning you asked for me, and we brought *571 you back over here the reason I’m asking you is because your rights still apply. You still understand your rights?
Stevens: I have the right to remain silent.
Chaney: Everything that I read you last night, do you still understand your rights?
Stevens: Mm-hmm.
Chaney: You can have a lawyer present if you want one. Stevens: I want, that’s what I need. I want to know what’s, you know what I’m saying.
Chaney: You can stop answering at any time.
Stevens: That’s what I want, a lawyer, man.
Chaney: You do want a lawyer.
Stevens: I mean, that’s what I thought they brought me up here for today.
Nicholson: Well they gonna appoint you a lawyer. I mean you gonna get a lawyer.
Chaney: The question is do you want a lawyer before you talk to us again or are you willing to talk to us?
Stevens: I mean I’ll listen to ya but you already said if I could stop if I wanted.
Chaney: Stop answering at any time you want to.
Stevens: I’ll listen to what you got to say. If you want — if I say something — if I feel I don’t want to say no more y’all done told me I can stop.
Nicholson: Yes sir.
Chaney: Stop anytime you want.
Nicholson: No problem at all with that.
Chaney: All you got to say is I don’t want to say — I don’t want to talk to you no more. That’s all you gotta say.
After this exchange, Stevens made incriminating statements to Chaney and Nicholson, which he later sought to suppress. In support of his motion to suppress, Stevens argued that he unambiguously and unequivocally invoked his Fifth Amendment right to have counsel present during questioning, and thus all further questioning should have ended immediately. *572 In contrast, the Commonwealth argued that Investigators Chaney and Nicholson reasonably construed Stevens’ statement as ambiguous in light of the full circumstances surrounding Stevens’ aborted advisement and subsequent detention. Thus, the Commonwealth contended that the investigators were permitted to clarify the ambiguity. The trial court denied Stevens’ motion and admitted the incriminating statements made to police. Stevens was subsequently convicted of numerous crimes. This appeal followed.
II. ANALYSIS
As he did before the trial court, Stevens argues on appeal that he made an unambiguous and unequivocal request to have counsel present during custodial interrogation. Accordingly, he contends that police questioning should have immediately ceased after he said, “That’s what I want, a lawyer, man.”[5] We disagree.
We view the facts “in the light most favorable to the Commonwealth,” the prevailing party below, Carter v. Commonwealth, 280 Va. 100, 104, 694 S.E.2d 590, 593 (2010), and grant it “all inferences reasonably deducible therefrom,” Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998). However, whether a defendant invoked his right to have counsel present during custodial interrogation presents a mixed question of law and fact. Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005). Hence, “‘the determination of what [the defendant] actually said is a question of fact we review only for clear error,’ ” but “ ‘[w]hether those words are sufficient to invoke a right to counsel is a legal determination that we review de novo.’” Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir.1993)).
*573 The Fifth Amendment guarantees that “[n]o person ... shall be compelled in any criminal case to be a witness against himself.” U.S. Const, amend. V. To prevent such compulsion, the United States Supreme Court has “established a number of prophylactic rights designed to counteract the ‘inherently compelling pressures’ of custodial interrogation, including the right to have counsel present” during custodial interrogation. McNeil v. Wisconsin, 501 U.S. 171, 176, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991) (quoting Miranda, 384 U.S. at 467, 86 S.Ct. at 1624); see also Edwards, 451 U.S. at 485-86, 101 S.Ct. at 1885 (“The Fifth Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation.”). Thus, as the Supreme Court has recognized, “to have counsel present during a custodial interrogation is an axiom of American law.” Zektaw v. Commonwealth, 278 Va. 127, 135, 677 S.E.2d 49, 53 (2009) (emphasis added).
Once an accused requests to have counsel present during custodial interrogation, the accused “is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” Edwards, 451 U.S. at 484-85, 101 S.Ct. at 1885. Thus, the police “ ‘may not reinterrogate an accused in custody if he has clearly asserted [this] right to counsel.’ ” Arizona v. Roberson, 486 U.S. 675, 680, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704 (1988) (emphasis added) (quoting Edwards, 451 U.S. at 485,101 S.Ct. at 1885). However, nothing in Edwards prevents police from questioning a suspect who does “not wish to have a lawyer present” during questioning. Davis v. United States, 512 U.S. 452, 460, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994) (emphasis added).
It is not always clear, however, whether a suspect has invoked his right to have counsel present during custodial interrogation, and thus has asked for “the particular sort of lawyerly assistance that is the subject of Miranda,” McNeil, 501 U.S. at 178, 111 S.Ct. at 2209, or whether he has asked for *574 counsel for some other purpose. For instance, a suspect may seek the advice of counsel regarding preliminary police interaction, but not for the purpose of receiving counsel during custodial interrogation. See United States v. LaGrone, 48 F.3d 332, 333, 337 (7th Cir.1994) (holding that a suspect’s request for counsel to advise him on whether he should consent to a police search, pursuant to the Indiana Constitution, did not invoke his Miranda right to counsel during a subsequent custodial interrogation). In fact, a suspect may even request the presence of counsel during custodial interrogation on a limited basis that still permits some police questioning. See Connecticut v. Barrett, 479 U.S. 523, 525-26, 107 S.Ct. 828, 830, 93 L.Ed.2d 920 (1987) (holding that a suspect may invoke his Miranda right to counsel only with respect to written statements, while still permitting verbal statements without qualification). Further, a suspect may also validly choose to forego the presence of counsel during custodial interrogation and instead choose simply to have an attorney for formal proceedings before a court, United States v. Gouveia, 467 U.S. 180, 190, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984), or he may even choose to proceed without an attorney at all, Faretta v. California, 422 U.S. 806, 813-14, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562 (1975). Given the range of options available to an accused, it follows that “ ‘preserving the integrity of the accused’s choice to communicate with police only through counsel is the essence’” of the Court’s decisions affording the accused with a right to counsel in those circumstances. Minnick v. Mississippi 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990) (emphasis added) (quoting Patterson v. Illinois, 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988)); see also Barrett, 479 U.S. at 528, 107 S.Ct. at 831 (“The fundamental purpose of the Court’s decision in Miranda was ‘to assure that the individual’s right to choose between speech and silence remains unfettered throughout the interrogation process.’ ” (emphasis in original) (quoting Miranda, 384 U.S. at 469, 86 S.Ct. at 1625)).[6]
*575 Finally, while we recognize that “a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings,” Montejo v. Louisiana, — U.S. -, -, 129 S.Ct. 2079, 2090, 173 L.Ed.2d 955 (2009), where we are called upon to determine whether a reasonable police officer would have considered such a request ambiguous or equivocal, we must be mindful that
[suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates “substantial social costs,” which sometimes include setting the guilty free and the dangerous at large. [The United States Supreme Court has] therefore been “cautio[us] against expanding” it, and “[has] repeatedly emphasized that the rule’s ‘costly toll’ upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application.” [The Court has] rejected “[indiscriminate application” of the rule, and [has] held it to be applicable only “where its remedial objectives are thought most efficaciously served,” — that is, “where its deterrence benefits outweigh its ‘substantial social costs.’ ”
Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006) (some alterations in original) (citations omitted).
In light of these important considerations, we are now faced with how to evaluate a suspect’s statement to police regarding his desire for counsel. Obviously, to invoke the Miranda right to counsel “‘requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.’” Davis, 512 U.S. at 459,114 S.Ct. at 2355 (quoting McNeil, 501 U.S. at 178, 111 S.Ct. at 2209). But, if the statement is “ambiguous or *576 equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect [making the statement] might be” asking for the presence of an attorney during custodial interrogation, the officer may ask questions to clarify the statement. Id. (emphasis in original) (citing McNeil, 501 U.S. at 178, 111 S.Ct. at 2209; Edwards, 451 U.S. at 485, 101 S.Ct. at 1885). In fact, “when a suspect makes an ambiguous or equivocal statement, it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney” present. Id. at 461, 114 S.Ct. at 2356.
The Supreme Court has examined on many occasions whether a particular statement made by a suspect unambiguously and unequivocally invoked the suspect’s right to have counsel present during custodial interrogation. Oftentimes, it has viewed a defendant’s statement as seeking mere clarification of his Miranda right to counsel, and not as a clear invocation of that right. See, e.g., Hilliard, 270 Va. at 51, 613 S.E.2d at 585 (holding that the statement, “Can I have someone else present too, I mean just for my safety, like a lawyer like y’all just said?,” was not a clear assertion of the defendant’s Miranda right to counsel); Redmond, 264 Va. at 330, 568 S.E.2d at 700 (holding that the statement, “Can I speak to my lawyer? I can’t even talk to [a] lawyer before I make any kinds of comments or anything?,” was not a clear request for the presence of counsel during custodial interrogation); Midkiff v. Commonwealth, 250 Va. 262, 265-67, 462 S.E.2d 112, 114-15 (1995) (holding that “[t]he statement, ‘I’m scared to say anything without talking to a lawyer,’ ... does not clearly and unambiguously communicate a desire to invoke” a Fifth Amendment right to counsel). Yet other times, the Court has viewed certain statements as clear requests for counsel during custodial interrogation. For instance, in Zektaw, the Supreme Court held that the statement, “I’d really like to talk to a lawyer because this — oh my God, oh my Jesus, why?,” was an unambiguous and unequivocal invocation of the defendant’s right to counsel under Miranda. Zektaw, 278 Va. at 131-32, 138-39, 677 S.E.2d at 51, 55. The Court similarly held in *577 Commonwealth v. Ferguson, 278 Va. 118, 121, 126, 677 S.E.2d 45, 46, 49 (2009), that the statement, “Nah, I want a lawyer, you know what I’m saying?,” was a clear, unambiguous, and unequivocal request for counsel during custodial interrogation.
Like the statements in Zektaw and Ferguson, Stevens’ statement requesting counsel was certainly unequivocal in content; however, equivocation and ambiguity are two distinct concepts that each warrant our review. Unlike equivocation, ambiguity arises from the circumstances leading up to the statement, along with the statement itself, rather than the words of the statement alone. In Zektaw and Ferguson, the Supreme Court was presented only with statements made under traditional circumstances — that is, statements made by a defendant during police questioning with little or no other relevant circumstances leading up to the questioning itself. See Zektaw, 278 Va. at 131-32, 677 S.E.2d at 51; Ferguson, 278 Va. at 121-22, 677 S.E.2d at 46-47.
Accordingly, neither of those cases dealt with atypical circumstances leading up to a defendant’s request for counsel— circumstances that might have suggested the defendant was not requesting to have counsel present during police questioning, but rather, that suggested the defendant was seeking counsel for some other purpose. Such circumstances could render a suspect’s statement ambiguous, even if the statement’s words are unequivocal. Because we are now presented with this issue, we must evaluate whether the “circumstances leading up to the request for counsel would render it ambiguous,” Smith v. Illinois, 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984), such that the suspect failed to “ ‘articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney,’ ” Redmond, 264 Va. at 328-29, 568 S.E.2d at 699 (emphasis added) (quoting Davis, 512 U.S. at 459, 114 S.Ct. at 2355).[7]
*578 When we so evaluate the specific circumstances of this case, we conclude that Investigators Chaney and Nicholson, as police officers familiar with those circumstances, could reasonably have considered Stevens’ request to be ambiguous — that it was just as likely Stevens was referring to his desire to have an attorney appointed to represent him before the court as it was that he was requesting an attorney to be present before further questioning. Stevens had been arrested and interrogated by Nicholson and Chaney the day before he gave his statements to them. Before the first interrogation began, Nicholson and Chaney advised Stevens of his Miranda rights, and he waived those rights. During that first interrogation, Stevens never requested to speak to an attorney, and thus he never expressed a desire to have an attorney present during the first interrogation. Therefore, it was reasonable for the investigators to infer that they had built a rapport with Stevens and that he was willing to speak with them without an attorney present.
Thereafter, Stevens was transferred to an unknown jail, but the next day, he found himself back in a holding cell in Chatham, near Chaney and Nicholson’s police station. Chaney and Nicholson did not instigate their second meeting with Stevens; rather, Stevens specifically asked to speak with Chaney.[8] Stevens expressed an interest in being released so he could see his young son. Chaney later had Stevens *579 brought over to the police station to talk with him and Investigator Nicholson. At that time, both Chaney and Nicholson understood that Stevens had been transferred for advisement and that once Stevens made an appearance in court — whenever that might be — the court would appoint him an attorney.[9]
Thus, when Stevens said, “That’s what I want, a lawyer, man,” explaining “that’s what I thought they brought me up here for today,”[10] the context in which the statement was *580 made interjected some ambiguity into the statement itself. There is surely nothing unreasonable about the officer’s uncertainty as to whether Stevens wanted counsel present for custodial interrogation, or whether he wanted counsel for some other purpose — specifically, to represent him at trial.[11] Further, since Stevens had not previously requested the presence of counsel, and since Stevens had instigated the second meeting, Chaney and Nicholson could have reasonably wondered whether Stevens wanted a lawyer present before he talked to them, or whether he wanted a lawyer to aid him with adversarial judicial proceedings. Therefore, under the facts of this case, we hold that the investigators could have reasonably viewed Stevens’ statement as ambiguous, and thus they were permitted to ask Stevens clarifying questions when he made that objectively ambiguous statement.[12]
*581 We are mindful that the judicially crafted rule of Miranda and Edwards “is justified only by reference to its prophylactic purpose.” Maryland v. Shatzer, — U.S. -, -, 130 S.Ct. 1213, 1220, 175 L.Ed.2d 1045 (2010). Its purpose is to preserve “ ‘the integrity of an accused’s choice to communicate with police only through counsel.’ ” Texas v. Cobb, 532 U.S. 162, 175, 121 S.Ct. 1335, 1344, 149 L.Ed.2d 321 (2001) (Kennedy, J., concurring) (quoting Patterson v. Illinois, 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988)); see also Shatzer, — U.S. at-, 130 S.Ct. at 1220 (describing the preservation of the accused’s choice as “the fundamental purpose” of the Miranda-Edwards rule). Thus, the rule does not bar “ ‘an accused from making an initial election as to whether he will face the State’s officers during questioning with the aid of counsel, or go it alone.’” Cobb, 532 U.S. at 175, 121 S.Ct. at 1344 (Kennedy, J., concurring) (emphasis in original) (quoting Patterson, 487 U.S. at 291, 108 S.Ct. at 2394). Rather, it permits the accused to make the choice that he believes is best; therefore, if the accused elects to go it alone, we should not exclude his subsequent statements at trial. Id.; see Davis, 512 U.S. at 459, 114 S.Ct. at 2355.[13]
Since the police must respect and act upon a suspect’s choice, we will suppress a statement made outside of an *582 attorney’s presence “only if a reasonable officer should have been certain that the suspect expressed” the unambiguous and unequivocal election of his right to counsel during custodial interrogation. Cobb, 532 U.S. at 176, 121 S.Ct. at 1345 (Kennedy, J., concurring) (emphasis added) (citing Davis, 512 U.S. at 459, 114 S.Ct. at 2355). As we have explained, a reasonable police officer would not necessarily have had such certainty in this case.
As we have noted, when police officers are confronted with factual circumstances leading up to “a [suspect’s] reference to counsel that [is] insufficiently clear to invoke the Edwards prohibition to further questioning,” Davis, 512 U.S. at 454, 114 S.Ct. at 2352, “it will often be good police practice for the interviewing officers to clarify whether or not [the suspect] actually wants an attorney” present, id. at 461, 114 S.Ct. at 2356. Investigators Chaney and Nicholson followed this “good police practice” when they explained to Stevens that a lawyer would be appointed to represent him when he appeared in court, and then asked, “The question is do you want a lawyer before you talk to us again or are you willing to talk to us?” They merely clarified his ambiguous statement, which was both the legally allowable and legally prudent response to that statement. Thus, the investigators’ behavior was appropriate here.
III. CONCLUSION
For the foregoing reasons, we conclude that the full circumstances leading up to Stevens’ request for counsel rendered Stevens’ statement ambiguous. A reasonable police officer under the circumstances could have reasonably wondered whether Stevens had invoked his right to have counsel present during custodial interrogation, or whether he had invoked a right to counsel for some other purpose. Thus, the police were permitted to clarify the request. Therefore, we affirm.

Affirmed.

. By granting the petition for rehearing en banc, we vacated the previous panel decision. Logan v. Commonwealth, 47 Va.App. 168, 170, 622 S.E.2d 771, 772 (2005).

. Although Stevens would not sign a waiver form, Stevens verbally agreed to waive each of his Miranda rights to the investigators. The parties do not dispute that Stevens validly waived his Miranda rights during this first interrogation.

. The parties have, at various times, referred to this proceeding as an advisement or arraignment. Clearly, the proceeding was Stevens' initial appearance before a court not of record for purposes of advising him of his right to bail and right to counsel and for appointment of *570 counsel if appropriate. Code §§ 19.2-158, 19.2-159. For purposes of this opinion, we will refer to this proceeding as an advisement.

. It is important to note that there is no transcript of this conversation. Rather, a video recording was introduced at trial. Because the trial court was able to view the conversation, it could consider not just the words spoken, but also the inflection, body language, and tone of voice of Stevens, Chaney, and Nicholson. Having watched the video, we note that, although the written words suggest a deliberate and sequential conversation, much of the quoted dialogue was a fast-paced exchange. The entire time lapse from the beginning of Stevens' explicit request for a lawyer until the end of his comment "that’s what I thought they brought me up here for today” was approximately four seconds.

. Stevens’ position, as crystallized during oral argument, was that his subsequent statements became inadmissible the moment Investigator Chaney said, "You do want a lawyer.”

. While we are well aware that the right to counsel and the right to remain silent during custodial interrogation are two distinct rights *575 under Miranda, we also recognize that the legal issues surrounding those two rights in particular are very similar, if not the same. See Berghuis v. Thompkins,-U.S.-,-, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (explaining that “there is no principled reason to adopt different standards for determining when an accused has invoked the Miranda right to remain silent and the Miranda right to counsel”).

. As the Kansas Supreme Court has held, "The timing as well as the content and context of a reference to counsel may help determine whether there has been an unambiguous assertion of the right to have *578 the assistance of an attorney in dealing with a custodial interrogation by the police.” State v. Appleby, 289 Kan. 1017, 221 P.3d 525, 548 (2009).

. The dissent strongly emphasizes that, in its view, Chaney and Nicholson initiated a third, distinct meeting with Stevens. However, when we examine the facts in the light most favorable to the Commonwealth, we conclude that the material exchange arose from a continuation of the second meeting that had been instigated by Stevens. Chaney explained this when he said, "|T]his morning you asked for me, and we brought you back over here,” i.e., as a result of Stevens' request. Even if, however, we accepted the dissent's characterization of the meeting, the fact remains that Chaney and Nicholson went into the meeting knowing about the aborted advisement. As we explain below, that aborted advisement serves as the backbone of the unique circumstances that inserted ambiguity into Stevens’ statement.

. At oral argument, Stevens argued that no evidence suggested that the investigators were actually aware of the aborted advisement or that Stevens was expecting the imminent appointment of counsel. However, because we must view the evidence in the light most favorable to the Commonwealth and grant it all reasonable inferences from that evidence, Jenkins, 255 Va. at 521, 499 S.E.2d at 265, we must presume that the investigators were aware of these peculiar circumstances. When asked if he knew why Stevens had been returned to Chatham, Investigator Chaney testified that he "figured he was, he was coming to be arraigned.” He also testified that he was "pretty sure [he] had broached that subject [of whether Stevens had been appointed a lawyer] but [he couldn’t] say for sure.” He further acknowledged that Stevens did not, at that point, tell Chaney that he had been appointed a lawyer. For that second meeting, the investigators met Stevens at a holding cell in the juvenile and domestic relations district court, and therefore the trial court could reasonably infer that they understood that Stevens had been brought to the wrong location. More notably, during the second meeting, Nicholson explained that a lawyer would be appointed for Stevens, and then Chaney asked, "The question is do you want a lawyer before you talk to us again or are you willing to talk to us?” Thus, by their words and actions, the investigators clearly indicated that they understood the peculiar circumstances before them when they approached Stevens for the second time.

. Because of the trial court’s position as fact-finder, we must defer to its judgment regarding the nature of the exchange and the “statement” to be evaluated as memorialized on video. Given Stevens’ and the investigators’ mannerisms, along with the disjointed nature of the colloquy, the trial court reasonably viewed Stevens' statement as a whole — not merely considering the first part, as Stevens asks us to do. Although Investigator Chaney interjected a statement of surprise — one he characterized as a comment, not a question — -by quickly exclaiming, “You do want a lawyer,” that did not affect the unity of the statement made by Stevens, nor was Chaney’s interjected statement of surprise impermissible interrogation. In fact, not even " 'subtle compulsion’ ” amounts to impermissible interrogation, Rhode Island v. Innis, 446 U.S. *580 291, 303, 100 S.Ct. 1682, 1691, 64 L.Ed.2d 297 (1980), which goes beyond the interjected statement of surprise here.
Further, we do not view Chaney's single comment recognizing Stevens’ request for an attorney as even approaching the improper "continued police questioning” presented by Smith, 469 U.S. at 91-93, 105 S.Ct. at 491. There, ”[t]he interrogation ... bore a substantial similarity to the one condemned in Edwards v. Arizona, where the accused after requesting counsel was told that 'he had’ to talk to his interrogators.” Id. at 99 n. 8, 105 S.Ct. at 494 (quoting Edwards, 451 U.S. at 479, 101 S.Ct. at 1882). As the Court explained, "It was precisely such '[badgering]’ that the Edwards safeguard was designed to prevent.” Id. (alteration in original) (citing Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983)).

. Although we recognize that we view these facts under an objective standard, we note that when Chaney was asked whether he perceived Stevens’ statement as a request for a lawyer to help him with court proceedings and bond hearings, or a request to have a lawyer present for questioning, Chaney responded, "I wasn’t sure. That’s why I was trying to clarify.”

. The dissent observes that the statement occurred in the context of a custodial interrogation, and thus it reasons that only an exploration of the immediate circumstances surrounding that custodial interrogation is warranted. We agree with the dissent that the exchange occurred in the context of a custodial interrogation. If we thought otherwise, we would not need to analyze whether Stevens’ statement was ambiguous, since that question arises only when a defendant could have conceivably requested the presence of counsel during custodial interrogation. See Davis, 512 U.S. at 459, 114 S.Ct. at 2355. Accordingly, even in the *581 context of custodial interrogation, ambiguity in a suspect's statement may arise. See id. To determine what circumstances may make the statement ambiguous, we see no reason to restrict our examination to only those circumstances that have happened mere seconds or minutes before. A reasonable police officer could certainly look beyond the immediate circumstances to determine how to react to a given situation and interpret a particular statement from a suspect.

. If police officers questioning a suspect "reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning 'would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity.'” Davis, 512 U.S. at 459, 114 S.Ct. at 2355-56 (quoting Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975)). Such a rule "would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present.” Id.