COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia

UNPUBLISHED

DEANDRE DOMINIQUE VAUGHT

v.      Record No. 0835-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 21, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Daniel W. Hall (Law Office of Daniel W. Hall, on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial in the Circuit Court of the City of Richmond ("trial court"), Deandre

Vaught ("Vaught") was convicted of a second offense of possession with intent to distribute cocaine

and possession with intent to distribute fentanyl. Vaught assigns error to the trial court for:

(1) finding the evidence sufficient to prove he either possessed or intended to distribute fentanyl and

cocaine; and (2) denying his motion for a continuance to allow him to timely file a demand for jury

sentencing. For the following reasons, we affirm the trial court.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*,

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

"Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (quoting *Gerald*, 295 Va. at 473).

On April 5, 2021, Vaught was indicted on one count each of possession of fentanyl and cocaine with intent to distribute, third offense.[1] On April 9, 2021, Vaught appeared in court, was appointed counsel, and the case was continued to a date in May 2021. Vaught's case was subsequently continued to June and later set for a jury trial scheduled for September 27, 2021. On August 31, 2021, the previously docketed date for the jury trial was vacated and the case was continued to what the trial court referred to as the "September 2021 [d]ocket [c]all." At this September 2021 docket call, Vaught's counsel moved to withdraw, his motion to withdraw was granted, substitute counsel was appointed, and the case was continued again to the October 2021 docket call. At the October 2021 docket call, Vaught's substituted counsel also moved to withdraw, withdrawal was granted, and a third attorney ("trial counsel") was appointed to represent Vaught. The case was continued again, this time to the November 2021 docket call. Whereupon the case was continued again, this time to the date of the January 2022 docket call at which time the jury trial was rescheduled for February 23, 2022. Vaught's trial counsel had previously filed a motion for discovery on December 22, 2021, and trial counsel received a discovery response from the Commonwealth on January 23, 2022.

On February 9, 2022, Vaught's trial counsel moved to vacate the February 23, 2022 date previously set for the jury trial which would permit him to timely file a notice for jury sentencing pursuant to Code § 19.2-295. Although trial counsel had previously filed a notice for jury sentencing, he admittedly filed the notice less than the thirty days before trial required by the statute. Vaught's trial counsel explained that he had failed to timely file the notice because he had only

---

[1] The Commonwealth later amended the indictments to possession with intent to distribute fentanyl and possession with intent to distribute cocaine, second offense.

received the Commonwealth's discovery response on the same day the filing of his notice was due and wanted to review the discovery with Vaught before deciding whether to request jury sentencing. The Commonwealth objected to the request for a continuance, arguing that the date of the jury trial had already been continued several times at Vaught's request. Counsel for Vaught responded that "this is a constitutional right that you are entitled to be t[r]ied by a community of [one's] peers, which would include sentencing." The trial court stated, "I think you had the constitutional right, you just didn't exercise it. . . . It could have easily been asked for within the time limit, it wasn't, that's the way it is" and denied Vaught's motion to continue.

Just before the commencement of trial on February 23, 2022, Vaught renewed his motion to continue and further argued that the trial court should allow him to question the jury panel during voir dire regarding the potential range of punishment upon conviction. Vaught suggested that it was within the province of the jury to base its decision on the "automatic trigger of a punishment" and that "constitutionally it [the jury] should be told what the punishment would be, especially in a mandatory minimum situation like this."[2] The trial court denied the motion and noted his exception to the court's ruling "in that regard for all the reasons [he] just stated."

At trial, the evidence established that Richmond Police Officer Brenda Ruiz ("Officer Ruiz") and other officers were dispatched to "a call for a person down, possibly an accident" on Marshall Street in Richmond. When she arrived, Officer Ruiz found Vaught slumped over in the driver's seat of a Volkswagen Jetta. The keys to the car were in his lap, and "he looked like he was possibly overdosing or had passed out in some way." Vaught was the sole occupant of the vehicle. As she approached the Jetta, Officer Ruiz observed a clear plastic bag full of an off-white powdery substance between Vaught's feet. The officers awakened Vaught and asked him to exit the vehicle.

---

[2] The charge of possession with intent to distribute cocaine, second offense carried a mandatory minimum three-year sentence. Code § 18.2-248(C).

He was "very unstable on his feet" and said his name was "Charles." Vaught declined medical attention; he also provided an incorrect social security number and did not accurately identify himself until after he was transported to the precinct. The vehicle was not registered to Vaught, but it did not appear to Officer Ruiz that anyone else had been in the vehicle because it was cluttered with clothing, CDs, tools, and other items that were strewn about on both the front passenger seat and the back seat.

Officer Ruiz collected the plastic bag from the driver's side floor and observed that the substance was wet and looked like sugar. She also found a baggie containing a gray powder substance on the driver's seat where Vaught had been sitting. Eight additional clear plastic baggies containing the same gray powdery substance were recovered from various locations inside the vehicle, including the driver's side door slot, the floorboard, the driver's seat, and between the driver's seat and the center console. She found a cell phone on the driver's side of the vehicle, a cell phone in Vaught's pocket, and a scale on the passenger seat. Vaught also had a quantity of cash.[3] Later, Officer Ruiz observed a bag containing 20 individually packaged baggies with a similar gray powder on the ground where Vaught was standing. Vaught denied consuming any alcohol or drugs and told Officer Ruiz that the gray powder was "crushed up Xanax." Officer Ruiz testified that Vaught said his "target" "buyers" for the "Xanax" were "college kids and things like that."

After being analyzed at the Department of Forensic Science, the gray powder was determined to be fentanyl—not Xanax. The net weight of the 29 individually packaged bags of fentanyl was 13.47 grams. The off-white powder substance was also analyzed and determined to be 29.27 grams of cocaine.

Richmond Police Detective Mike Poerstel ("Detective Poerstel") testified as an expert in street level distribution of Schedule I or II controlled substances. Detective Poerstel testified that

---

[3] The record does not disclose the amount of cash Vaught had.

the amount of narcotics collected in this case, along with the cell phones, the scale, and the cash, were inconsistent with personal use. Detective Poerstel explained that it is common for drug dealers to have two cell phones, one for personal use and one for business purposes, and that the scale facilitates a "level of accuracy there on the dealer-to-dealer level," as well as ensures a profit margin for individual sellers. Detective Poerstel further testified that the recovered cocaine equaled approximately 145 dosage units, or "hits," and had a street value of $2,900. Detective Poerstel stated that a typical user only possessed two to three "hits" at a time and opined that having that large of a quantity of cocaine indicated a certain level of status in the drug world because it meant that the person had access to another higher-level dealer.

Regarding the fentanyl, Detective Poerstel opined that the amount recovered equaled approximately 155 dosage units and had a street value of $3,100. Detective Poerstel stated that the 13.47 grams was more than a heavy user would typically possess because even a heavy user consumed no more than approximately 2.5 grams per day. Detective Poerstel testified that drug dealers are also frequently drug users and that in Vaught's case the weight of the drugs alone—even without the scale, cash, and multiple cell phones—was too large of an amount to be consistent with personal use. Detective Poerstel explained that it would take a heavy user fifteen days to ingest the cocaine and seven days to use the fentanyl recovered in this case, which he considered an unlikely scenario.

Vaught's mother and aunt testified on his behalf stating that they often witnessed Vaught using drugs. At the conclusion of all the evidence, Vaught moved to strike based on his assertion that the evidence was insufficient to prove he possessed either fentanyl or cocaine with the intent to distribute. In support of the motion to strike, Vaught contended that the car where the drugs were found was not registered to him and that the amounts of cocaine and fentanyl were consistent with

his consumption as a heavy user. The trial court overruled the motion to strike, and the jury ultimately convicted Vaught of possession with intent to distribute both fentanyl and cocaine.

During the sentencing hearing, Vaught's trial counsel requested that separate counsel be appointed to represent Vaught on appeal following sentencing because "I anticipate that he may be bringing up issues that would directly involve me. . . . There was an issue with timely filing of the notice with regard to the jury." Before appointing a different attorney to represent Vaught on appeal, the trial court inquired if Vaught still wanted the jury to sentence him, with no audible response. The trial court also asked Vaught whether he understood: (1) "if the jury sentences you, they don't have the ability to suspend any time," (2) the jury "would have been told that the guidelines carry five to forty or five to life on these [charges]," (3) he "might well have gotten 40, 50, 30 years on this," and (4) that it is beneficial to be sentenced by a judge sentencing with the aid of a presentence report. Vaught responded to the colloquy: "Yes." The trial court then sentenced Vaught to 30 years in prison, with 17 years suspended. This appeal followed.

## II. ANALYSIS

### A. *There was sufficient evidence to support the convictions for possession with intent to distribute.*

Vaught first asserts that the evidence was insufficient to prove he possessed both the fentanyl and the cocaine with the intent to distribute them.[4] We disagree.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v.*

---

[4] Vaught's brief contains two separate assignments of error, one for each drug. However, because the analysis for both assignments of error is the same, we combine the assignments of error and address them as one.

*Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

"To convict an individual of possession of a controlled substance, 'the Commonwealth must prove that the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them.'" *Merritt v. Commonwealth*, 55 Va. App. 719, 733 (2010) (quoting *Castaneda v. Commonwealth*, 7 Va. App. 574, 583 (1989)). Such possession may be actual or constructive, and constructive possession "can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)). "Furthermore, proof that a person is in close proximity to contraband is a relevant fact that . . . may tend to show that, as an owner or occupant . . . of a vehicle, the person necessarily knows of the presence, nature and character of a substance that is found there." *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992).

Vaught acknowledges admitting to possessing at least some of the drugs found and to being a heavy drug user. Thus, his primary contention is that the evidence at trial was insufficient to

prove he intended to distribute the narcotics he possessed. Vaught suggests that Detective Poerstel's expert opinion was based almost entirely on the quantity of the substances Vaught had in his possession rather than any proper assessment of his case. To Vaught, the facts only supported possession consistent with his admitted heavy drug use rather than the intent to distribute.

"'Possession with intent to distribute is a crime which requires an act [of possession] coupled with a specific intent.' Because direct proof of intent is often impossible to produce, it may, and frequently must, be shown by circumstantial evidence." *Barlow v. Commonwealth*, 26 Va. App. 421, 429 (1998) (quoting *Stanley v. Commonwealth*, 12 Va. App. 867, 869 (1991) (en banc)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000). "Circumstantial evidence probative of intent to distribute may include: quantity of drugs seized, packaging, presence of [an] unusual amount of cash, and drug paraphernalia or equipment related to distribution." *Pulley v. Commonwealth*, 74 Va. App. 104, 127 (2021). "Accordingly, the fact-finder may consider such factors as the quantity of the drugs seized and the presence of equipment or other items related to drug distribution." *Burrell v. Commonwealth*, 58 Va. App. 417, 434 (2011). "An expert witness may [also] use these factors to express an opinion on whether a defendant's possession of drugs was inconsistent with personal use." *Id.* "As with any case, the fact finder is entitled to make reasonable inferences from the evidence presented at trial to determine whether the defendant possessed drugs with the intent to distribute them." *Id.*

Here, a rational trier of fact could have found that Vaught possessed the cocaine and fentanyl with the intent to distribute them. Detective Poerstel, testifying as an expert in street level distribution of controlled substances, opined that the quantities of cocaine and fentanyl recovered were inconsistent with personal use. He further opined that if Vaught's cocaine was divided into

quantities typically distributed to users, the amount he possessed would equate to 145 dosage units or "hits." Detective Poerstel also opined that the 13.47 grams of fentanyl Vaught possessed equaled 155 dosage units. Moreover, Detective Poerstel opined that these amounts were more than a heavy drug user would possess because a user of cocaine would typically only possess two or three hits at a time and even a heavy fentanyl user would consume no more than 2.5 grams per day. Finally, Detective Poerstel concluded that—even without the scale, the cash, and the multiple cell phones recovered from the scene—the quantities of narcotics were too large to be consistent with personal use. It is well settled that "[p]ossession of a controlled substance in 'a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" *Williams v. Commonwealth*, 52 Va. App. 194, 202 (2008) (quoting *Monroe v. Commonwealth*, 4 Va. App. 154, 156 (1987)).

We also note that conspicuously absent from the evidence collected at the scene were any items or other paraphernalia indicative of personal use, such as hypodermic needles, syringes, spoons, pipes, or lighters. "[T]he absence of paraphernalia suggestive of personal use . . . [is] regularly recognized as [a] factor [ ] indicating an intent to distribute." *Askew v. Commonwealth*, 40 Va. App. 104, 108 (2003) (all but first alterations in original) (quoting *Welshman v. Commonwealth*, 28 Va. App. 20, 37 (1998) (en banc)). The fentanyl was also packaged in individual baggies. "A trier of fact may also consider how the drugs were packaged." *Holloway v. Commonwealth*, 56 Va. App. 667, 677 (2010). Vaught's own statement confirmed that his "target" "buyers" for the "Xanax" were "college kids and things like that." These facts supported the jury's factual finding that Vaught possessed the narcotics and that he did so with the intent to distribute them.

Hence, many of the relevant factors indicative of an intent to distribute were in evidence, including the quantity of drugs possessed, the cash, the scale, the multiple cell phones, the fentanyl packaged in individual baggies, and the absence of any device suggestive of personal use. Vaught

even admitted that he intended to sell the "Xanax" to college kids. Thus, the evidence clearly supported the jury's conclusion that Vaught possessed the narcotics with the requisite intent to distribute them.

B. *The trial court did not err in denying Vaught's motion for a continuance.*

Vaught also contends that the trial court erred in refusing to continue the jury trial so that he could timely file a notice for jury sentencing. We disagree.

"The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Cornell v. Commonwealth*, 76 Va. App. 17, 32 (2022) (quoting *Hall v. Commonwealth*, 296 Va. 577, 587 (2018)). "The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant." *Id.* (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "Abuse of discretion and prejudice to the complaining party are essential to reversal." *Ferguson v. Colonial Pipeline Co.*, 206 Va. 719, 722 (1966). "The absence of one renders inconsequential the presence of the other." *Bolden v. Commonwealth*, 49 Va. App. 285, 290 (2007). "We cannot reverse if the defendant 'has shown no prejudice resulting from what he claims was an abuse of discretion' in granting or denying a continuance motion." *Id.* (quoting *Quintana v. Commonwealth*, 224 Va. 127, 135 (1982)).

"Within the limits prescribed by law, the court shall ascertain the term of confinement . . . when a person is convicted of a criminal offense, unless the accused is tried by a jury and has requested that the jury ascertain punishment." Code § 19.2-295(A). "Such request for a jury to ascertain punishment shall be filed as a written pleading with the court at least 30 days prior to trial." *Id.* Moreover,

> [i]n any criminal case, the court and counsel for either party shall
> have the right to examine under oath any person who is called as a

> juror therein and shall have the right to ask such person or juror
> directly any relevant question to ascertain whether the juror can sit
> impartially in either the guilt or sentencing phase of the case . . . .
> The court and counsel for either party may inform any such person or
> juror as to the potential range of punishment to ascertain if the person
> or juror can sit impartially in the sentencing phase of the case.

Code § 19.2-262.01.

Vaught has shown neither an abuse of discretion nor prejudice. Vaught filed a demand for jury sentencing outside the statutory limitation of 30 days before trial. Vaught had twice before requested and received a continuance prior to the commencement of the jury trial. When Vaught requested the third continuance on February 9, 2022, his case had been pending in the trial court for almost ten months and it had been continued for docket call at least five times. Vaught's trial counsel—who was the third attorney appointed to represent him—was appointed to the case on October 27, 2021. Vaught therefore had ample time to file a demand for jury sentencing but failed to do so. The fact that the Commonwealth filed its discovery response on January 24, 2022, is unpersuasive, especially when Vaught did not file his discovery motion until late in December 2021. The trial court denied a third continuance of a jury trial requested a mere three weeks before the jury trial was scheduled to commence in order that Vaught might timely request jury sentencing after his failure to do so by the statutorily created deadline. We cannot say that the trial court abused its discretion in denying a motion for a continuance asked for simply to permit Vaught to exercise an option he waived by his own indecision or delay.

Vaught has also failed to show that he was prejudiced by the trial court's denial of his continuance request. Vaught merely presumes a jury might have recommended a lower sentence than the one he received from the trial court. However, "[p]rejudice . . . 'may not be presumed; it must appear from the record.'" *Bolden*, 49 Va. App. at 290 (quoting *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990)). Nor could we find or presume that there is some inherent prejudice in being sentenced by a court rather than a jury. Indeed, when Vaught's trial counsel mentioned the

"issue with timely filing of the notice with regard to the jury," the trial court inquired if Vaught wanted the jury to sentence him, with no audible response. Vaught then acknowledged his understanding that the jury would have been informed of the range of punishment for each of the charges. Vaught then conceded that it was beneficial to him for the judge to sentence him with the assistance of a presentence report.

For these reasons, Vaught has failed to show that the trial court abused its discretion or that he was prejudiced by its denial of his request for a continuance. Accordingly, we find no abuse of discretion with the trial court's denial of his continuance motion.

### III. CONCLUSION

The Commonwealth's evidence was sufficient for a rational trier of fact to conclude that Vaught possessed cocaine and fentanyl with the intent to distribute. Moreover, the trial court did not abuse its discretion in denying Vaught's motion for a continuance. Accordingly, we affirm the judgment.

*Affirmed.*