COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia

JOEL AARON BURRELL

                                            OPINION BY
v.      Record No. 0488-10-1          JUDGE WILLIAM G. PETTY
                                            JUNE 28, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Louis R. Lerner, Judge[1]

Ben Pavek (Office of Public Defender, on briefs), for appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Appellant, Joel Aaron Burrell, was convicted of possession of cocaine with intent to

distribute.  Burrell argues the trial court erred when it (1) denied a motion to suppress statements

he made in response to police questioning after he claims to have invoked a right to counsel and

(2) concluded that the evidence was sufficient to prove he intended to distribute the cocaine in

his possession.  For the following reasons, we disagree and affirm.

## I.  BACKGROUND

We view the evidence in the light most favorable to the Commonwealth, and grant to it

all reasonable inferences fairly deducible from that evidence.  Brown v. Commonwealth, 56

Va. App. 178, 180, 692 S.E.2d 271, 272 (2010).  So viewed, the facts are that the police entered

a house in Hampton where Burrell lived with his girlfriend and her children to execute a search

warrant.  Upon entering the house, the police detained all the people present, namely, Burrell and

---

[1] Judge Lerner presided over appellant's trial, while Judge Bonnie Jones presided over
appellant's pre-trial hearing conducted pursuant to his motion to suppress.  Decisions by both
judges are the subject of this appeal.

the children. They then searched the house for drugs and other items related to their distribution. In a bedroom they found three bags of cocaine collectively weighing about 12.1 grams, a digital scale, plastic bags, and an "owe sheet" detailing amounts of money presumably owed by several people. When the police entered the house, they saw Burrell leaving the bedroom.

After the police discovered these items, the lead police officer, Detective Hake, questioned Burrell in another room. Before questioning him, Detective Hake read Burrell his Miranda rights, which Burrell acknowledged he understood. In response to questions posed by Hake, Burrell told Hake that he lived at the house and that he sometimes slept in the bedroom along with his girlfriend. Hake then informed Burrell that they had discovered cocaine in the bedroom and asked if it belonged to him.

According to Hake, in response Burrell "stated that certain questions he didn't want to answer without a lawyer." Attempting to clarify the remark, Hake asked Burrell if he didn't want to speak to him at all without a lawyer, and Burrell "stated no, there was just certain questions he didn't want to answer." Hake then asked Burrell for his girlfriend's phone number. When Burrell asked Hake why he needed it, Hake explained that he would need to question his girlfriend about the cocaine found in her bedroom. Thereafter, Burrell admitted to Hake that the cocaine belonged to him. After Burrell made this admission, Detective Hake immediately repeated his earlier clarification, asking Burrell whether he wanted to speak to him without a lawyer. Burrell "stated that he did." Nevertheless, Detective Hake asked for a third time whether Burrell "was sure he wanted to speak to [Hake] without a lawyer present," and Burrell repeated that he did. Burrell then reiterated to Detective Hake that the cocaine was his, and he explained that he was not lying to protect his girlfriend. Burrell also admitted the digital scale belonged to him, but he denied distributing cocaine and using the scale for that purpose.

Before trial, Burrell brought a motion to suppress the statements he made to Detective Hake, arguing that he had invoked a right to have counsel present before answering questions about the cocaine and that Detective Hake improperly continued to interrogate him thereafter. In contrast, the Commonwealth argued that Burrell's request for counsel was ambiguous or equivocal because it left unclear what questions he would not answer without counsel present. At the conclusion of the motion, the trial court said:

> Well, the major problem here is that the defendant introduced the qualifier. There has been no question throughout this case that he was the one that said there were certainly questions that he would answer. Detective Hake asked him after he said that and he said there are just certain questions I don't want to answer. I will talk to you but certain ones I won't. Detective Hake didn't ask him any more about the cocaine. He switched subjects after that.

Thus, the court denied Burrell's motion to suppress the statements he made to Detective Hake.

The Commonwealth admitted these statements, along with the items discovered in the bedroom, into evidence at trial. Further, another police officer, Detective Roberts, testified without objection that the amount of the cocaine found in the bedroom and the other items recovered in the bedroom—the digital scales, baggies, and the owe sheet—all demonstrated that Burrell's possession of cocaine was inconsistent with personal use. Finally, the Commonwealth properly admitted into evidence a certificate of analysis, along with the testimony of a state forensic chemist, confirming that the police recovered about 12.1 grams of solid, homogenous material containing cocaine. The chemist testified that she tested a small amount of the substance in each bag recovered from the bedroom and determined that the portion tested was cocaine. At the close of the Commonwealth's evidence, Burrell made a motion to strike, arguing that the Commonwealth failed to prove that the entire 12.1 grams of the solid, homogenous substance found in the bedroom was cocaine, because the chemist had only tested a small portion of the substance in each baggie. The trial court denied this motion, and did so again when

- 3 -

Burrell renewed the motion at the close of all the evidence.  After denying the motion to strike at the close of the evidence, the trial court, sitting without a jury, found Burrell guilty of possession of cocaine with intent to distribute in violation of Code § 18.2-248.  This appeal followed.

## II.  ANALYSIS

### A.  Right to Counsel

Burrell first assigns error to the trial court's decision denying his motion to suppress. Burrell argues the trial court should have suppressed the statements he made to Detective Hake after he told Hake that "certain questions he didn't want to answer without a lawyer."  He suggests that his reference to counsel made it clear to Detective Hake that he was unwilling to answer any questions about the cocaine found in the bedroom without a lawyer present, and therefore the trial court should have suppressed the statements he made thereafter in accordance with Miranda v. Arizona, 384 U.S. 436 (1966), and Edwards v. Arizona, 451 U.S. 477 (1981). Burrell further claims that the trial court "made the [factual] finding that [he] stated he did not want to answer any questions in reference to the cocaine" without an attorney.  In response, the Commonwealth argues that Burrell's reference to counsel was an ambiguous or equivocal request, and, thus, the trial court appropriately denied his motion.

Because Burrell did not make it objectively clear what questions Detective Hake could not ask, we agree with the Commonwealth.  As we explain in further detail below, we hold that when a suspect makes a statement during a custodial interrogation that requests the presence of counsel before answering some questions, while also indicating a willingness to answer other questions without the presence of counsel, the statement must make it clear to a reasonable police officer what questions the suspect is unwilling to answer for the statement to effectively

- 4 -

invoke the suspect's Miranda-Edwards right to counsel.[2]  If the suspect fails to do this, the police may continue questioning him, and his subsequent statements remain admissible.[3]

Whether a defendant has invoked his right to have counsel present during a custodial interrogation presents a mixed question of law and fact.  Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005).  We accept the trial court's finding regarding what a defendant actually said, Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002), unless it is "'plainly wrong or without evidence to support it,'" Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999) (quoting Code § 8.01-680; King v. Commonwealth, 217 Va. 601, 604, 231 S.E.2d 312, 315 (1977)).  However, whether the defendant's statement effectively invoked a right to counsel is a legal question that we review *de novo*.  Redmond, 264 Va. at 327, 568 S.E.2d at 698.

We must first confront Burrell's claim that the trial court, in announcing its decision, "made the [factual] finding that [he] stated he did not want to answer any questions in reference to the cocaine."  This claim conflates the distinct factual and legal questions before us.  The trial court's determination of the *words* Burrell used is a factual finding that generally binds us on appeal.  Id.  In that regard, the trial court implicitly accepted Detective Hake's testimony when it expressly found that Burrell said there were "certain questions" he would not answer without a

---

[2] Because Burrell claims only a violation of his right to have counsel present, rather than his right to remain silent, we analyze the former issue and not the latter in this opinion. Nevertheless, we note that any difference between those rights is most likely inconsequential to our analysis.  See Berghuis v. Thompkins, 130 S. Ct. 2250, 2260 (2010) (explaining that "there is no principled reason to adopt different standards for determining when an accused has invoked the Miranda right to remain silent and the Miranda right to counsel").

[3] The Miranda-Edwards right to counsel applies when the police have a suspect in custody and they interrogate him.  Edwards, 451 U.S. at 481-82 (citing Miranda, 384 U.S. at 479).  Since neither party has questioned whether Burrell was subject to a custodial interrogation, we assume that a custodial interrogation occurred for the purposes of this appeal.

lawyer.[4]  Thus, that factual finding binds us on appeal.  However, the *legal* effect of the words used by Burrell is a question we review *de novo*.  Id.  Therefore, assuming without deciding that Burrell has correctly characterized the trial court's statement as a conclusion regarding the meaning of Burrell's statement, that conclusion is irrelevant because it is a legal determination to which we give no deference.  See id.  Instead, we must interpret Burrell's words anew to determine whether they effectively invoked his right to have counsel present during custodial interrogation and thus rendered his subsequent statements inadmissible.

The United States Constitution prohibits the police from compelling a suspect to testify against himself.  U.S. Const. amend. V.  To protect this right, the United States Supreme Court has adopted additional prophylactic rights designed to protect this constitutional right against self-incrimination.  Maryland v. Shatzer, 130 S. Ct. 1213, 1219 (2010).  These rights include, among others, the right to have an attorney present during custodial interrogation.  Edwards, 451 U.S. at 481-82 (citing Miranda, 384 U.S. at 479).  If the suspect requests the presence of counsel during a custodial interrogation, "'the interrogation must cease until an attorney is present.'"  Id. at 482 (quoting Miranda, 384 U.S. at 474).  If interrogation continues despite this request, the appropriate remedy is to exclude, or suppress, the statements made in response to the interrogation.  Id. at 487.

However, for two reasons relevant to this case, a reference to counsel does not always warrant suppression of subsequent statements made by a suspect in response to police questioning.

---

[4] Burrell makes no argument in this appeal that Detective Hake was incorrect in his testimony as to what Burrell actually said.  At trial, Burrell vaguely testified that he "asked for an attorney," but he never elaborated on the precise words he used.  In any event, the trial court accepted the fact that Burrell made the qualification described by Detective Hake.  We cannot say that the trial court was plainly wrong when it made that factual finding.  See Hickson, 258 Va. at 387, 520 S.E.2d at 645.

First, "a suspect may . . . request the presence of counsel during custodial interrogation on a limited basis that still permits some police questioning." Stevens v. Commonwealth, 57 Va. App. 566, 574, 704 S.E.2d 585, 589 (2011) (en banc). Nothing in Miranda or its progeny prohibits the police from continuing to question a suspect when the suspect makes a qualified request for counsel, to the extent permitted by the qualification. Connecticut v. Barrett, 479 U.S. 523 (1987) (fully explaining this very principle); see Michigan v. Mosley, 423 U.S. 96, 103-04 (1975) (explaining that the rights afforded by Miranda enable a suspect to "control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation"); United States v. Soliz, 129 F.3d 499, 503 (9th Cir. 1997) (holding that a suspect "may selectively waive his Miranda rights by agreeing to answer some questions but not others"); see also State v. Adams, 627 N.W.2d 623, 626 (Mich. Ct. App. 2000), cert. denied, 638 N.W.2d 752 (Mich. 2001) (relying on Barrett for the proposition "that if a suspect asserts the desire to deal with counsel only in part, the suspect may be questioned in a manner that does not intrude on that partial request for counsel"). Thus, statements the suspect seeks to suppress that were made in response to police interrogation are admissible at trial if the suspect's qualified invocation of his right to counsel permitted that interrogation. Barrett, 479 U.S. at 529-30; see also State v. Murray, 827 So. 2d 488, 501 (La. Ct. App. 2002) (relying on Barrett to hold that "the limited invocation of the right to counsel does not preclude the admissibility of statements a defendant makes which fall outside the limited invocation"), cert. denied, 852 So. 2d 1020 (La. 2003).

Second, a request for counsel must be unambiguous and unequivocal. Davis v. United States, 512 U.S. 452, 458-60 (1994). Not all statements mentioning a lawyer are an effective request for the presence of counsel. See id. A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. at 459. The inquiry is entirely

objective—the subjective expectations of the suspect are irrelevant.  Id. at 458-59 (citing Barrett, 479 U.S. at 529).  "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," police questioning may continue.  Id. at 459 (citing Edwards, 451 U.S. at 485).  As Edwards aptly put it, statements made in response to police interrogation become inadmissible only when a suspect in custody "has *clearly* asserted his right to counsel."  Edwards, 451 U.S. at 485 (emphasis added).

Given these principles, it follows that when a suspect makes a qualified invocation by requesting the presence of counsel before answering certain kinds of questions, the qualification must also be unequivocal and unambiguous and thereby make it clear to a reasonable police officer what kinds of questions the suspect is unwilling to answer.[5]  See Davis, 512 U.S. at 458-59.  To do that, the qualification must be one that a reasonable police officer would understand as placing a specific question outside the boundaries of the interrogation until the condition the suspect has placed on the question is met, i.e., until counsel is present.  See id. at 459.  For instance, in Barrett, a suspect told police that he was willing to talk to the police without counsel, but unwilling to make any written statements unless he first consulted with an attorney.  Barrett, 479 U.S. at 525-26.  This statement clearly conveyed what conduct the suspect

---

[5] We are not the first court to come to the conclusion that a qualified invocation must unambiguously and unequivocally identify the limitations the suspect wishes to impose upon police.  See, e.g., Adams, 627 N.W.2d at 625-28 (applying Barrett and concluding that a suspect "did not unambiguously place certain subjects relating to [the crime] off limits" when the suspect told police that he would not answer a question about the motive for the crime without a lawyer present, but agreed to answer further questions, resulting in the admissibility of his answers to the further questions); cf. United States v. Quiroz, 13 F.3d 505, 510-11 (2d Cir. 1993) (stating that "a suspect's 'limited request for counsel . . . accompanied by affirmative announcements of his willingness to speak with the authorities' should be taken *at their face value* and do not bar the authorities from questioning him within the limitations he has imposed" (emphasis added) (quoting Barrett, 479 U.S. at 529)).

would not engage in without the presence of counsel. Id. at 527. Similarly, in Soliz, police asked a suspect whether he was willing to make a statement regarding his citizenship, his nationality, and his suspected illegal activity. Soliz, 129 F.3d at 501. He responded that he was willing to make a statement only about his citizenship. Id. Nevertheless, police asked about his suspected illegal activity, resulting in statements he later sought to suppress. Id. at 501-02. Thus, just like the suspect in Barrett, the suspect in Soliz made it clear to the police what questions he was unwilling to answer and, therefore, what questions police could not ask. Id. at 504. By making these statements, the suspects could render later statements made in violation of their specific qualifications inadmissible. Barrett, 479 U.S. at 529; Soliz, 129 F.3d at 504.

However, a suspect's qualified invocation will not render later incriminating statements inadmissible if a reasonable police officer would believe only that the qualification *might* place certain questions outside the boundaries of the interrogation while counsel is not present. See Davis, 512 U.S. at 459. Here, Burrell told Detective Hake only that there were "certain questions" he would not answer without a lawyer present. He never explained what those certain questions were. Burrell, however, suggests that he *implicitly* told Detective Hake that he was unwilling to answer questions about the cocaine found in the bedroom. We cannot say that a reasonable police officer would have understood which questions Burrell had placed off limits. While Burrell's statement suggested that he might, at some point in the future, specifically refuse to answer one or more subsequent incriminating questions without a lawyer present, it did not objectively indicate that Burrell was then unwilling to answer any specific questions about the cocaine.[6]

---

[6] Adams is instructive on this point. In that case, the police asked a suspect about a motive the suspect may have had to commit the crime the police were investigating. Adams, 627 N.W.2d at 626. The suspect told the police he would not answer the question without a lawyer present, but that the police could continue asking questions and he would let them know which ones he was willing to answer. Id. The Adams court held that the suspect "did not

- 9 -

It is not enough to say that Burrell intended the qualification to have the latter effect, as Burrell's argument suggests. A suspect's subjective intent is insufficient to warrant suppression. Davis, 512 U.S. at 458-59 (citing Barrett, 479 U.S. at 529). Thus, in Barrett, the United States Supreme Court concluded that the suspect's oral statements were admissible even though the suspect may have thought that his refusal to make any written statements without counsel would effectively prevent his incriminating admissions from coming in at trial. See Barrett, 479 U.S. at 530. Likewise, the Supreme Court of Virginia has also recognized instances where a suspect's reference to counsel was insufficient to invoke a suspect's Miranda-Edwards right to counsel and render his subsequent statements inadmissible, even though the reference suggested that the suspect may have subjectively desired the presence of counsel. See, e.g., Hilliard, 270 Va. at 51, 613 S.E.2d at 585 (holding that the statement, "Can I have someone else present, too, I mean just for my safety, like a lawyer, like y'all just said?" was not an effective invocation of the Miranda-Edwards right to counsel); Redmond, 264 Va. at 330, 568 S.E.2d at 700 (holding that the statement, "Can I speak to my lawyer, I can't even talk to a lawyer before I make any kinds of comments or anything?" was not an effective invocation of the Miranda-Edwards right to counsel).

Despite any subjective desire Burrell may have had to have counsel present before answering questions about the cocaine found in his bedroom, he did not actually request to have counsel present before answering such questions. He said only that there were "certain questions" he would not answer without an attorney present, but he did not explain the exact

---

unambiguously place certain subjects relating to [the crime] off limits," other than the question about motive. Id. at 627. Like the suspect in Adams, Burrell similarly indicated his willingness to answer "certain" questions without counsel but not others, and by doing so, invited the police to ask additional questions. Thus, like the statement in Adams, the statement in this case could reasonably be viewed as indicating to police an intention to alert them about the permissibility of specific questions as those questions were asked. However, unlike the statement in Adams, the statement here did not put any particular questions off limits.

nature of the questions he was unwilling to answer. Thus, Burrell did not make it clear to a reasonable police officer what questions he was unwilling to answer without an attorney present. Accordingly, we conclude that Burrell's request did not effectively invoke his Miranda-Edwards right to counsel, and thus his subsequent statements to Detective Hake were admissible. Therefore, we affirm the trial court's decision denying Burrell's motion to suppress.

### B. Sufficiency of the Evidence

Burrell also assigns error to the trial court's holding that the evidence was sufficient to establish his intent to distribute the cocaine in his possession. As he did at trial, Burrell argues that the Commonwealth failed to prove that *all* of the solid, homogenous substance in Burrell's possession was cocaine. He agrees that the Commonwealth proved that a small portion of the substance was cocaine, but he posits that by failing to test all of the substance, the Commonwealth failed to prove that all 12.1 grams of the substance was actually cocaine. He therefore reasons that the Commonwealth failed to prove that he was in possession of a large enough amount of cocaine to enable the fact-finder to infer that he possessed the cocaine with the intent to distribute. We disagree.

When reviewing the sufficiency of the evidence to support the verdict in a bench trial, "the trial court's judgment is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless it is 'plainly wrong or without evidence to support it.'" Hickson, 258 Va. at 387, 520 S.E.2d at 645 (quoting Code § 8.01-680; King, 217 Va. at 604, 231 S.E.2d at 315). Hence, an "appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Britt v. Commonwealth, 276 Va. 569, 573-74, 667 S.E.2d 763, 765 (2008) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (emphasis

- 11 -

in original) (quoting <u>Jackson</u>, 443 U.S. at 319). "'This familiar standard gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" <u>Brown</u>, 56 Va. App. at 185, 692 S.E.2d at 274 (quoting <u>Jackson</u>, 443 U.S. at 319).

"'Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence.'" <u>Ervin v. Commonwealth</u>, 57 Va. App. 495, 521, 704 S.E.2d 135, 148 (2011) (en banc) (alterations in original) (quoting <u>Welshman v. Commonwealth</u>, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (en banc)). Accordingly, the fact-finder may consider such factors as the quantity of the drugs seized and the presence of equipment or other items related to drug distribution. <u>McCain v. Commonwealth</u>, 261 Va. 483, 493, 545 S.E.2d 541, 547 (2001) (citing several cases). An expert witness may use these factors to express an opinion on whether a defendant's possession of drugs was inconsistent with personal use. <u>Askew v. Commonwealth</u>, 40 Va. App. 104, 109-10, 578 S.E.2d 58, 61 (2003). As with any case, the fact-finder is entitled to make reasonable inferences from the evidence presented at trial to determine whether the defendant possessed drugs with the intent to distribute them. <u>See, e.g.</u>, <u>Brown</u>, 56 Va. App. at 185, 692 S.E.2d at 274; <u>Ford v. Commonwealth</u>, 55 Va. App. 598, 608, 687 S.E.2d 551, 556 (2010). Logically, then, when a portion of an unknown substance is tested and confirmed to be an illegal drug, it is not unreasonable for the fact-finder to infer that the entire amount is the same illegal drug if the totality of the circumstances supports that inference. <u>See</u> <u>United States v. Fitzgerald</u>, 89 F.3d 218, 223 n.5 (5th Cir. 1996) ("Random sampling is generally accepted as a method of identifying the entire substance whose quantity has been measured.").

In this case, Burrell urges us to ignore the considerable leeway the fact-finder has both to make reasonable inferences from the evidence and to consider the totality of the circumstances presented by that evidence to determine whether he possessed cocaine with the intent to

- 12 -

distribute it. The fact-finder was entitled to find that the substance in Burrell's possession was cocaine and that he possessed a significant amount of it. The Commonwealth proved that a portion of the substance seized from the bedroom was cocaine, and the fact-finder was free to make the reasonable inference that the remaining untested portion of that solid, homogenous substance was also cocaine. When we further consider the defendant's possession of a digital scale, baggies, the "owe sheet" that matched names to amounts of money, and Detective Roberts' credible testimony that Burrell's possession of the cocaine was inconsistent with personal use, we conclude that the evidence was sufficient to prove that Burrell possessed the cocaine with the intent to distribute it.

## III. CONCLUSION

For the foregoing reasons, we conclude that Burrell failed to effectively invoke a right to counsel, and thus, the trial court properly denied Burrell's motion to suppress. Further, the evidence was sufficient to prove that Burrell possessed cocaine with the intent to distribute it. Therefore, we affirm his conviction.

Affirmed.