COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Friedman and Frucci
Argued at Norfolk, Virginia


KEONDRE' LAMAR JOHNSON, SOMETIMES KNOWN AS
  KEONDRE L. JOHNSON
                                                        MEMORANDUM OPINION* BY
v.      Record No. 1876-23-1                            JUDGE RICHARD Y. ATLEE, JR.
                                                        MAY 6, 2025
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                              Rufus A. Banks, Jr., Judge

                Kelsey Bulger, Deputy Appellate Counsel (Michelle C. F. Derrico,
                Senior Appellate Attorney; Virginia Indigent Defense Commission,
                on briefs), for appellant.

                Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
                Attorney General, on brief), for appellee.


        Following a jury trial, the trial court convicted Keondre' Lamar Johnson of felony

possession with intent to distribute marijuana between one ounce and five pounds and felony

possession of a firearm while in possession of marijuana with intent to distribute.[1]  On appeal,

Johnson contends that although he intended to assist Aaron Jackson in concealing proof of

Jackson's drug dealing, the evidence failed to prove that he personally intended to distribute the

marijuana he took from Jackson's apartment.  We affirm because the record contains sufficient

evidence to support the jury's finding that Johnson intended to distribute the marijuana.

_____

        * This opinion is not designated for publication.  See Code § 17.1-413(A).

        [1] Additionally, the jury convicted Johnson of the misdemeanor offenses of carrying a
concealed weapon, obstruction of justice, and concealing or compounding a felony.  Johnson did
not appeal the misdemeanor convictions.

# I. BACKGROUND

"On appeal, we state the facts in the light most favorable to the Commonwealth," the prevailing party below. *Newsome v. Commonwealth*, 81 Va. App. 43, 48 (2024).

Chesapeake Police Department's Vice and Narcotics ("vice") unit was investigating Aaron Jackson for suspected fentanyl distribution. On February 16, 2022, while members of the vice unit were surveilling Jackson at his apartment, they observed a hand-to-hand transaction between Jackson and another individual. Vice detectives stopped the second individual and recovered suspected fentanyl pills. When law enforcement conducted a traffic stop of Jackson, they recovered "$9,000 in nine separate stacks" and a firearm from the center console, as well as a backpack filled with multiple bags of various drugs. Detective Anthony Rega went to obtain a search warrant for Jackson's apartment while other detectives remained with Jackson at his car. Detective Keijon James was with Jackson when the latter's mother, Jodith Jackson, came to the scene. James informed her that Jackson had been arrested and that the police would be executing a search warrant at his apartment. At that point, Jackson and his mother whispered to each other, and she left.

Officers watched the apartment while awaiting the search warrant. About 20 to 30 minutes after the surveillance had begun, Johnson drove up to the apartment complex, looked around at the parking lot, and then walked directly to the breezeway of Jackson's apartment. Johnson did not appear to have a backpack on his person. As Johnson approached the breezeway, Jodith arrived at the apartment in a separate vehicle, which was moving "at a fairly high rate of speed for a parking lot." She exited the vehicle and approached the building. The two then entered Jackson's apartment and remained inside for, at most, ten minutes. When Johnson exited the apartment, he had a backpack over his shoulder. As Johnson and Jodith exited the apartment, law enforcement detained them both.

After detaining Johnson, Detective Russell Keene asked him if he was armed, and Johnson replied that he had weapons in the front of his waistband. Detective Bryan Brinkley-Laning then recovered a Glock 19 pistol and a BB gun from Johnson's waistband and a magazine in his hoodie pocket. During the weapons search, "[a] large clear plastic bag of green, leafy[] plant material" that was vacuum-sealed fell from Johnson's hoodie to the ground. The police then seized the backpack. Detective Ashley Souther found another vacuum-sealed package similar to the one that fell to the ground. Souther also recovered a smaller bag of suspected marijuana, an "ammo can full of various rounds of ammunition, . . . multiple different firearm magazines," plastic sandwich baggies, and "marijuana packaging material." The baggies were empty, unused, and closed. A search of Johnson also revealed he had $820 in cash in his pockets, comprised of 41 $20 bills. A search of Jodith's purse revealed that it contained $10,396 in cash.

The Commonwealth introduced expert testimony that the Glock pistol was operational. Additionally, the Commonwealth presented expert testimony that the three bags recovered from Johnson contained 15.983 ounces, 15.928 ounces, and .228 ounce of marijuana.

Detective Aaron Gosnell testified as an expert on narcotics use and distribution. Gosnell opined that the two pounds of marijuana in Johnson's possession was inconsistent with personal use. A user might typically have one to four ounces. Gosnell stated that the going rate for an ounce of marijuana was $125 to $300 depending on quality and that the marijuana seized here appeared to be "a higher-quality marijuana." One pound of "mid-grade" marijuana had an estimated resale value of $1800 to $2000. Gosnell explained that vacuum-sealed packages are commonly used in drug trafficking. He also testified that firearms and drug distribution are "very commonly connected." A BB gun, when it appears to be a firearm at first glance like the one recovered from Johnson here, can be used to threaten or "scare someone away from doing something." Likewise, the large amount of cash on Johnson was a factor in his expert opinion because it is the "the most

common form of payment" in drug transactions. Finally, Gosnell noted the absence of any "ingestion devices" like rolling papers or glass smoking pieces, which "lends itself more to the fact that it's inconsistent with personal use."

At the close of the Commonwealth's evidence, Johnson made a motion to strike, arguing that the evidence was insufficient to prove his intent to distribute because it merely showed that he "was trying to destroy the evidence or assisting his friend and getting that stuff out of there before the search warrant was executed." The trial court denied the motion. The jury found Johnson guilty of felony possession with intent to distribute marijuana and felony possession of a firearm while in possession of marijuana with intent to distribute, among other misdemeanor offenses not at issue on appeal. The trial court imposed a total sentence of 8 years and 18 months, with 2 years and 24 months suspended. Johnson appeals.

## II. ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The only relevant question for this Court on appellate review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

"Absent a direct admission by the defendant, intent to distribute must necessarily be proved by circumstantial evidence." *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *Williams v. Commonwealth*, 278 Va. 190, 194 (2009)); *see also Scott v. Commonwealth*, 55

Va. App. 166, 172 (2009) (en banc) (acknowledging the frequent need to prove intent to distribute drugs through circumstantial evidence, as it "is often impossible" to do with direct evidence). "Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). "Several factors may constitute probative evidence of intent to distribute a controlled substance," including "the quantity of the drugs seized, the manner in which they are packaged, and the presence of an unusual amount of cash, equipment related to drug distribution, or firearms." *Gregory v. Commonwealth*, 64 Va. App. 87, 100 (2014) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). Further, "[a]n expert witness may use these factors to express an opinion on whether a defendant's possession of drugs was inconsistent with personal use." *Burrell v. Commonwealth*, 58 Va. App. 417, 434 (2011).

The question of intent presents a factual issue that "lies peculiarly within the province of the jury." *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (en banc) (quoting *Ingram v. Commonwealth*, 192 Va. 794, 802 (1951)). "Intent is a factual determination, and a trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011). The trier of fact "is entitled to make reasonable inferences from the evidence presented at trial to determine whether the defendant possessed drugs with the intent to distribute them." *Burrell*, 58 Va. App. at 434.

In the trial court, Johnson's sole argument challenging the evidence of the charges for possession with intent to distribute between one ounce and five pounds of marijuana and possession of a firearm while in possession of marijuana with intent to distribute was that he was merely "trying to destroy the evidence or assisting his friend and getting that stuff out before the

search warrant was executed." On appeal, Johnson concedes his guilt on the misdemeanor offenses and his intent to conceal the contraband in Jackson's apartment, but he maintains that the evidence did not prove his intent to distribute the marijuana found in his possession.[2]

The controlling issue here is whether the record supports the jury's finding that Johnson intended not merely to help cover up evidence of Jackson's drug trafficking, but also to distribute the marijuana.[3] Johnson's argument that he had only one intent in rushing to Jackson's apartment to remove marijuana and other contraband involved in drug distribution is fundamentally flawed, because it fails to recognize that "a defendant may act with more than one intent." *Eberhardt v. Commonwealth*, 74 Va. App. 23, 38 (2021); *see also Moody v. Commonwealth*, 28 Va. App. 702, 707-08 (1998) (holding that a specific criminal intent may coexist with a less culpable intent). The fact that Johnson admitted that he "intend[ed] to commit [one crime] simply does not preclude the conclusion that he additionally intended to commit another . . . ." *Green v. Commonwealth*, 72 Va. App. 193, 201 (2020).

This principle is well-established in our case law. In *Eberhardt*, we affirmed the defendant's child cruelty conviction, stating that even if crediting the defendant's contention that he intended to administer corporal punishment, that circumstance did "not preclude a finding that he also acted either with the willful intent to inflict the injuries that resulted or with criminal negligence, lacking proper regard for whether his actions would result in those injuries."

---

[2] Insofar as Johnson raises any other argument to challenge the sufficiency of the evidence (for example, that there was no proof he was aware of the contents of the backpack), it is barred under Rule 5A:18. "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

[3] On brief, Johnson refers to Jackson as his "friend," but nothing in the record bears out that characterization. The record provides a greater justification for describing Jackson as a partner in crime or co-conspirator. We also note that Johnson does not contest the fact that the items taken from Jackson's apartment were probative of Jackson's own drug trafficking. Indeed, he concedes as much on brief.

*Eberhardt*, 74 Va. App. at 39.  Similarly, in *Moody*, we affirmed a conviction for attempted malicious wounding where a teacher attempted to prevent the defendant from driving a stolen car out of the school parking lot and avoided being hit only by jumping out of the way at the last moment.  *Moody*, 28 Va. App. at 704-05.  We held that the evidence sufficiently proved both the defendant's intent to flee the parking lot *and* "his further intent to run down [the teacher] in the process of doing so."  *Id.* at 708.  Furthermore, in *Green*, we found the record supported the trier of fact's finding that defendant "entered the residence with the intent to trespass *and* commit another misdemeanor, specifically, destruction of property."  *Green*, 72 Va. App. at 201.

We hold that the record here supports the jury's finding that Johnson acted with multiple intents in removing drugs and other contraband from Jackson's apartment.  Expert testimony is frequently offered to show an intent to distribute and, when considered along with other evidence, may be sufficient to prove guilt.  *See, e.g.*, *Burrell*, 58 Va. App. at 434.  Here, Gosnell testified that the two pounds of marijuana in Johnson's possession when he left Jackson's apartment was an amount inconsistent with personal use.  *See McCain*, 261 Va. at 493.  Further, the packaging and baggies were those commonly used in drug distributions.  *Id.*  Moreover, the large amount of cash and the firearms Johnson was carrying were circumstances typically associated with drug trafficking.  *Id.*  The fact that Johnson removed otherwise lawful Ziploc baggies and packaging materials from the apartment belied his contention that he intended only to remove items from the apartment that could incriminate Jackson.  Finally, the absence of any personal ingestion devices "is evidence of an intent to distribute."  *Holloway v. Commonwealth*, 57 Va. App. 658, 669 (2011).

Finally, Johnson's reliance on *McDonald v. Mississippi*, 454 So. 2d 488 (Miss. 1984), is not persuasive.  *McDonald* reversed the defendant's conviction for conspiracy to possess and distribute marijuana under circumstances significantly different from those in the present case.

There, the defendant, a deputy sheriff investigator with the sheriff's office, learned of his brother's role in a marijuana trafficking scheme and helped him haul marijuana to another conspirator's home after the brother expressed some "urgency" about the situation. *Id.* at 489. The defendant stated that he did not arrest any of the conspirators not only because it would mean arresting his own brother and a "lifelong friend," but also because he thought he "could get them to understand and leave the stuff alone and not get involved in this kind of stuff." *Id.* at 490. The defendant further testified that he thought the conspirators would get rid of the marijuana because of the dangerous situation that they found themselves in. *Id.* The Mississippi Supreme Court reversed McDonald's conviction for conspiracy to possess and distribute marijuana because there was no "recognition on his part that he [wa]s entering into some kind of common plan, and knowingly intend[ing] to further its common purpose." *Id.* at 495.

In sharp contrast, the record here reflects no opposition by Johnson to the drug trafficking in which Jackson was admittedly involved. Further, as discussed above, Johnson possessed not only the marijuana but other items indicative of his participation in distributing drugs. The very fact that Johnson rushed to Jackson's apartment to remove evidence of the drug distribution before the police arrived with a search warrant was a circumstance the trier of fact could find pointed to his intent to distribute the marijuana.

The question of Johnson's intent in removing incriminating evidence from Jackson's apartment was one for the jury to resolve. It reasonably found that Johnson had multiple intents in taking the contraband from the apartment, among them being an intent to distribute the marijuana. Given that the record supports this finding, we have no basis for overruling it.

## III. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*