COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia


RONNIE RAY BLANTON, JR.

OPINION BY
v.      Record No. 0373-24-2      CHIEF JUDGE MARLA GRAFF DECKER
NOVEMBER 18, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Robert H. Morrison, Judge

Michael T. Trent (The Trent Law Practice, PLC, on brief), for
appellant.

Dennis J. McLoughlin, Jr., Senior Assistant Attorney General
(Jason S. Miyares, Attorney General; Rebecca Johnson Hickey,
Assistant Attorney General, on brief), for appellee.


Ronnie Ray Blanton, Jr., appeals his conviction for possessing methamphetamine with

the intent to distribute in violation of Code § 18.2-248. Blanton argues the trial court erred by

holding that the evidence was sufficient to support his conviction and sentence. He suggests the

Commonwealth did not prove that he acted with the intent to distribute the amount of

methamphetamine required for enhanced punishment. He further contends that it failed to prove

the weight and "consistency" of the drugs. We hold the trial court did not err and affirm

Blanton's conviction.[1]

_____

[1] Blanton was also convicted of felony eluding in violation of Code § 46.2-817(B).
Additionally, immediately after the trial court's pronouncement of sentence for the
methamphetamine and eluding offenses, he cursed at the court. He was found in summary
contempt for his behavior and sentenced to ten days in jail. Neither the felony-eluding
conviction nor the contempt finding is at issue in this appeal.

BACKGROUND[2]

Blanton was suspected of bringing a large quantity of narcotics into Halifax County, and a joint task force of state and local law enforcement officers set up an operation to intercept him. In March 2021, Supervisory Special Agent R.B. George of the Virginia State Police surveilled Blanton as he drove to a Walmart parking lot where, after talking on his cell phone, he pulled his truck alongside a car in the middle of the lot. A few minutes later, after some interaction between the occupants of the two vehicles, Blanton returned home.

A short time later, Blanton got back into his truck with his girlfriend. Special Agent George and his team followed the pair to Halifax County, where they attempted to stop the truck. Instead of pulling over, Blanton increased his speed, and officers ultimately used spike strips to flatten the truck's tires and facilitate the ultimate apprehension. When Blanton's truck hit the strips, Sergeant Tyler Clarke of the Halifax County Sheriff's Office saw a black box as it was thrown from the passenger window. Some of the box's contents spilled out, including at least one bag containing a white substance that appeared to be narcotics.

Thirty to sixty seconds later, Special Agent George recovered the box, which still contained a pocketknife engraved with Blanton's name. From the ground near the box, George retrieved a spoon and a firearm magazine. He also recovered two ziplock bags of suspected methamphetamine.

Blanton initially denied that the box was thrown from his truck, but he ultimately "admitted [to Sergeant Clarke] that it did come out" and it contained "a lot of meth," specifically

---

[2] On appeal, the facts are recited "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, the appellate court discards any evidence that conflicts with the Commonwealth's evidence and "regard[s] as true all the credible evidence favorable to the Commonwealth and all . . . inferences [that can fairly] be drawn" from that evidence. *See Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

"more than half a pound." He told George that he met a man named "Q" at the Walmart and purchased approximately ten ounces of methamphetamine from Q.[3] He showed George text messages containing details about the meeting. According to Blanton, he planned to sell the drugs he had just bought to a certain individual in Halifax and then use the proceeds to "get more methamphetamine" from Q "that night."[4]

In a search of Blanton's truck and its contents, officers found two narcotics pipes, a digital scale with residue, and a jacket. In the pocket of the jacket was almost $2,000 in cash and a wallet containing a debit card bearing Blanton's name. The two ziplock bags, which contained a total of five knotted plastic bags of crystalline material, and the digital scale with residue were submitted to the Department of Forensic Science (DFS) for analysis.

At Blanton's jury trial, the Commonwealth offered the DFS certificate of analysis into evidence. The certificate provided that each of the five bags contained methamphetamine and the residue on the scale was also methamphetamine. Jennifer Clary, the senior forensic scientist at DFS who performed the testing, described weighing the contents of each of the five bags individually and removing a small sample from each bag. She confirmed that the substance in each of the bags appeared to "look the same" and was "consistent with what [she] would expect methamphetamine to look like." Clary separately analyzed a pea-sized sample of the contents of each bag and determined that each "contained a detect[a]ble amount of methamphetamine." The total net weight of the white crystalline material, exclusive of the plastic baggies, was "274.24

---

[3] Clarke confirmed that ten ounces equals about 280 grams.

[4] Blanton admitted that he "had a history" and "made a mistake" that might result in a lengthy prison sentence. He claimed that after being released from incarceration for a prior offense, he had "an honest job." But then he was in an accident that limited his ability to work and provide for his family, so he turned to distributing narcotics. Blanton added that he chose to distribute methamphetamine "as an alternative to heroin and [f]entanyl" to "prevent [people from] overdosing and dying."

grams +/- 0.23 grams," with a 95.45% certainty that the weight was within that range.[5] Clary noted that she did not perform a purity test.[6]

Special Agent George, who was qualified as an expert in the packaging and distribution of methamphetamine, testified about the 274 grams of that drug recovered from Blanton. He estimated that the average user "goes through maybe a half gram or gram in a twenty-four-hour cycle," at a market value of $100 per gram. Based on all the evidence—including the scales, the cash, the smoking devices, and Blanton's statements—George concluded that the quantity of methamphetamine was "inconsistent with personal use." He confirmed that it would be "unusual" for a mere "user to have more than one [or] two grams [in his possession] at a time."

The Commonwealth also offered evidence of a recorded telephone call that Blanton made to his brother Paul from jail. Blanton admitted to Paul that he "fucked up." He explained that while trying to outrun the police in his truck, he "told her," presumably referring to his girlfriend, the passenger, to "get rid of the shit" and "if they want[ed] it[,] they c[ould] get it out of the dirt." He added that the officers found money in his jacket, which he thought totaled $3,000.

After the Commonwealth's evidence, Blanton made a motion to strike, which the trial court denied. It held that DFS analyzed "two hundred and seventy-four grams of a substance containing a detect[a]ble amount of methamphetamine" and that determining the amount Blanton possessed was a jury issue. As to intent, the court reasoned that the quantity of drugs found was a persuasive factor and, considered with Blanton's statements that he was supporting himself by

---

[5] The individual bags contained 28.06 grams, 24.34 grams, 83.51 grams, 55.69 grams, and 82.64 grams.

[6] Clary explained, over defense counsel's objection, that under Virginia law, "if the weight of methamphetamine is greater than [200] grams in a mixture," a purity test is not required.

selling drugs, it was a "reasonable inference . . . that the drugs in the [truck] were his and . . . [he] was definitely planning to sell some of them."

Blanton did not present evidence. The jury returned a guilty verdict on the charge of possession with the intent to distribute 200 grams or more of a mixture containing a detectable amount of methamphetamine. Before sentencing, Blanton moved to set aside the verdict, challenging the sufficiency of the evidence to sustain it on the grounds raised in this appeal. The trial court denied the motion and sentenced Blanton to fifty years in prison with thirty years suspended for the drug offense.

ANALYSIS

Blanton challenges the sufficiency of the evidence to support his conviction for possession of methamphetamine with the intent to distribute in violation of Code § 18.2-248. He contests the proof of both his intent and the nature of the substance he possessed.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is [']plainly wrong or without evidence to support it.[']" *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (first alteration in original) (quoting *Garrick*, 303 Va. at 182). And a determination regarding the credibility of the witnesses and the weight to be given their testimony is a finding of fact entitled to deference on appeal under the plainly wrong standard. *Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022).

"[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

Instead, the question on appeal is whether "*any* rational trier of fact"—in this case, the jury— "could have found the essential elements of the crime beyond a reasonable doubt." *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (per curiam) (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Maust v. Commonwealth*, 77 Va. App. 687, 698-99 (2023) (en banc) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To the extent our sufficiency analysis involves related questions of law, they are reviewed de novo. *See Bowman v. Commonwealth*, 290 Va. 492, 496 (2015). Such questions include what elements are required to prove the underlying crime and the application of a particular penalty. *See id.*; *Alston v. Commonwealth*, 274 Va. 759, 764 (2007).

Code § 18.2-248 contains "enhanced punishment provision[s]" designed to deter drug dealers, both first offenders and recidivists. *See Mason v. Commonwealth*, 16 Va. App. 260, 263 (1993) (analyzing the enhanced-punishment provision of Code § 18.2-248(C)). The statute "gives the Commonwealth the option to seek enhanced mandatory minimum penalties for certain drugs based on the quantity of that drug" possessed. *Lewis v. Commonwealth*, 76 Va. App. 92, 96 (2022). The enhancements at issue apply to the possession of both "pure methamphetamine" and "a mixture or substance containing" the drug, although the degree of the enhancement varies depending on weight and purity. *Id.* at 97; *see* Code § 18.2-248(C)(4), (H)(5) (2014).[7]

---

[7] The 2014 version of Code § 18.2-248 that applies in Blanton's case remained in effect until 2025. *See* Code § 18.2-248 (2014 & Supp. 2025). The text of the applicable subsection, (H)(5), is now found in *identical form* in (H)(4). *Compare* 2014 Va. Acts ch. 513, *with* 2025 Va. Acts chs. 394, 403. All references in this opinion to any portion of Code § 18.2-248 are to the applicable 2014 version of the statute unless otherwise noted.

The applicable subsection of the statute provides that anyone who "possesses with the intent to . . . distribute . . . 100 grams or more of methamphetamine . . . or 200 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . . shall be guilty of a felony." Code § 18.2-248(H)(5). Blanton was convicted of violating the 200-grams-or-more clause. We address, in turn, his arguments that the evidence was insufficient to prove both his intent and the nature of the substance he possessed.

## I. Intent to Distribute

Blanton contends in his first assignment of error that the evidence failed to establish his intent to distribute "200 grams or more" of the methamphetamine mixture he possessed. He does not contest his intent to distribute the drug generally, only the intent to distribute *at least 200 grams* as required for the enhanced punishment imposed.

This Court's analysis of the issue begins with the fundamental principle that determining intent is a question for the trier of fact, here the jury. *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020). It may be proved based on a person's conduct or statements. *Id.* Circumstantial evidence that the fact finder may consider "probative of an intent to distribute" includes the amount of the drug possessed; the packaging; the presence of other suspicious items, such as "'an unusual amount of cash, equipment [used for] drug distribution, or firearms'"; and whether the amount "was 'inconsistent with personal use.'" *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (first quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001); and then quoting *Williams v. Commonwealth*, 278 Va. 190, 194 (2009)); *see Gregory v. Commonwealth*, 64 Va. App. 87, 100 (2014). To aid the jury in determining a defendant's intent, "[a]n expert witness may use these factors to express an opinion on whether a defendant's possession of drugs was inconsistent with personal use." *Burrell v. Commonwealth*, 58 Va. App. 417, 434

(2011). The jury is also "entitled to make reasonable inferences from the evidence presented at trial to determine whether the defendant possessed drugs with the intent to distribute them." *Id.*

Here, Blanton specifically *confessed* his intent to distribute the drugs tossed from his truck during the pursuit. He told Special Agent George that he had obtained the methamphetamine from Q and drove to Halifax County to sell it.[8] According to Blanton, he planned to meet with Q again, later that same day, to secure more of the drug. He candidly explained that he had turned to dealing drugs after he was injured. He said that he chose to distribute methamphetamine because he did not want to risk the accidental overdoses that were more likely with heroin or fentanyl. The jury was entitled to credit Special Agent George's testimony about Blanton's admissions. *See Barney*, 302 Va. at 97; *Washington*, 75 Va. App. at 615-16.

Ample physical circumstantial evidence in the record corroborates Blanton's confessed intent to distribute 200 grams or more of the methamphetamine mixture he had in his possession. *See Allen v. Commonwealth*, 287 Va. 68, 74 (2014) (requiring "slight corroboration" of an extrajudicial confession to support a conviction (emphasis omitted) (quoting *Cherrix v. Commonwealth*, 257 Va. 292, 305 (1999))).[9] The evidence proved Blanton had 274.24 grams of methamphetamine mixture in his possession, substantially in excess of the statute's 200-gram threshold. Special Agent George, qualified as an expert, testified that most users of

---

[8] George confirmed that the ten ounces of methamphetamine Blanton said he bought equaled approximately 280 grams, supporting the inference that Blanton intended to sell all of the 274.24 grams in his possession.

[9] Under Virginia's "corpus delicti rule, 'an accused cannot be convicted *solely* on his uncorroborated extrajudicial admission or confession.'" *Allen*, 287 Va. at 74 (emphasis added) (quoting *Watkins v. Commonwealth*, 238 Va. 341, 348 (1989)). The slight corroboration required, however, "need not be 'of all the contents of the confession[] or even [of] all the elements of the crime.'" *Id.* (quoting *Watkins*, 238 Va. at 348). And "slight corroboration exists when physical evidence relates to the confessed illegal act." *Id.*; *see Cherrix*, 257 Va. at 305-06.

methamphetamine keep no more than one or two grams on hand for personal use. Of course, the quantity of drugs Blanton possessed far exceeded that amount.[10] The methamphetamine recovered had a street value of around $27,000. *See Cole*, 294 Va. at 361. In addition to the quantity of the drugs, the officers found almost $2,000 in cash in Blanton's jacket, despite the fact that he was not legitimately employed. George testified that "[n]ot many people ride around with" that much money "in their pocket at any given time." *See id.* Finally, the digital scale found in Blanton's truck had methamphetamine residue on it. A reasonable juror could conclude that Blanton used the scale to weigh the drugs for sale. *See McCain*, 261 Va. at 493.

The totality of the circumstances provided more than the slight corroboration necessary for Blanton's confession that he possessed the 274.24 grams of methamphetamine mixture with the intent to distribute it and use the proceeds to buy more of the drug that night. *Cf. Magruder v. Commonwealth*, 275 Va. 283, 307-09 (2008) (holding that the confession made by one of the defendants was corroborated by his possession of 36 grams of cocaine and distribution paraphernalia, despite a lack of evidence corroborating the transportation element of the Code § 18.2-248.01 offense), *vacated and remanded on other grounds sub nom.*, *Briscoe v. Virginia*, 559 U.S. 32 (per curiam), *aff'd in part and rev'd in part sub nom.*, *Cypress v. Commonwealth*, 280 Va. 305, 320 (2010) (affirming the confessing defendant's conviction). The evidence, viewed under the proper standard, is sufficient to prove Blanton's intent to distribute with regard to the 200-grams-or-more element of the offense.

---

[10] That Blanton and his girlfriend possessed smoking devices, which tended to show they were users of the drug, did not preclude a finding that Blanton intended, as he said, to distribute the methamphetamine he had. George confirmed that in his training and experience, "it would be very unusual to have someone . . . distributing controlled substances that [wa]sn't also using." And Blanton specifically said he planned to use the proceeds from the sale of the methamphetamine he had in order to buy more of the drug that same night. Even if the jury reasonably concluded that Blanton might have intended to retain a small portion of the drug for personal use, he possessed significantly more than the 200-gram threshold.

## II. Nature and Characteristics of the Drug

Blanton's second and third assignments of error challenge the sufficiency of the evidence to prove specifics relating to the substance in his possession. *See Lewis*, 76 Va. App. at 105 (recognizing proof of the "nature" of the substance is an element of the offenses proscribed by Code § 18.2-248 (quoting *Cypress*, 280 Va. at 319)). He argues that the literal interpretation of Code § 18.2-248(H)(5) requires possession of a single mixture, not multiple separate mixtures combined, to meet the threshold of 200 grams. He also contends that the evidence failed to establish "consistency" throughout the mixture.

As already noted, to the extent our review of these sufficiency claims requires statutory construction, that issue presents a question of law "subject to de novo review." *Commonwealth v. Canales*, 304 Va. 200, 211 (2025). "When interpreting statutes, [the appellate court] must '"ascertain and give effect to the intention" of the General Assembly.'" *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022) (quoting *Farhoumand v. Commonwealth*, 288 Va. 338, 343 (2014)). The court "presume[s] that the General Assembly chose, with care, the words that appear in a statute," and it "appl[ies] the statute in a manner faithful to that choice." *Thompson v. Commonwealth*, 73 Va. App. 721, 728 (2021) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)). "Although criminal statutes are to be strictly construed against the Commonwealth, the appellate court must also 'give reasonable effect to the words used' in the legislation." *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)). "We do not isolate particular words or phrases but rather examine a statute in its entirety." *Lewis*, 76 Va. App. at 105 (quoting *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006)). And it is well-established that the "plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow[,] or strained construction." *Morehead v. Commonwealth*, 66 Va. App. 241, 246 (2016) (quoting

- 10 -

*Newton v. Commonwealth*, 21 Va. App. 86, 89 (1995)).  It is in light of these principles that we review Blanton's second and third assignments of error.

## A.  Proof of the Weight of the Drugs

Blanton contends that the statutory language prevents the Commonwealth from combining the weight of the five bags of methamphetamine mixture that he was transporting together in a single box.  He suggests that the statute's use of the term, "a mixture," refers to the content of each bag separately.

This Court has noted that the special treatment of methamphetamine in the statutes of the Commonwealth was part of a legislative effort "aimed at drug kingpins and dealers."  *Lewis*, 76 Va. App. at 109 & n.6 (quoting Va. Dep't of Plan. & Budget, Building Virginia's Future: A Time for All Virginians, at A-7 (2000), https://dpb.virginia.gov/budget/00-02/buddoc00/overview.pdf, *in* 2000-2002 Va. Gov. Proposed Biennial Budget § A, ch. 1, https://dpb.virginia.gov/budget/00-02/buddoc00/buddoc.cfm).  That treatment is patterned after a federal drug statute, which contains identical language regarding large quantities of specified drugs possessed with the intent to distribute.  *See id.* at 109-10 (citing *Chapman v. United States*, 500 U.S. 453, 459 (1991)).  The federal statute has been held to constitute "a 'market-oriented' approach to punishing drug trafficking" by targeting "the *total quantity* of what is distributed . . . to determine the length of the sentence."  *Chapman*, 500 U.S. at 461 (emphasis added) (citing 21 U.S.C. § 841(b)(1)(A)(i)-(viii), (B)(i)-(viii) (Supp. II 1982)).  These identically structured federal and state penalty provisions provide adjustments for drug weight depending on the "form [in which] the[ drugs] were found—[un]cut or []cut, pure or impure, ready for wholesale or ready for distribution at the retail level."  *Id.*

Nothing in the statutory language reflects an intent by the legislature to prohibit *aggregating* the weight of multiple packages of illegal drugs of the same type to determine the

weight of the "mixture or substance" for which a defendant may be prosecuted and punished under Code § 18.2-248(H)(5). In short, the plain language of Code § 18.2-248(H)(5)'s enhanced penalty provision contains no requirement for unitary packaging, and we will not read such a requirement into that provision. *Cf. Chapman*, 500 U.S. at 461 (holding the various subsections of 21 U.S.C. § 841(b)(1) target "total quantity"); *United States v. Bacon*, 991 F.3d 835, 843 (7th Cir. 2021) (expressly approving of, in dicta, aggregating the weight of two quantities of "a mixture or substance containing fentanyl" under the enhanced-penalty provision of 21 U.S.C. § 841(b)(1)(A)(vi)).[11]

Allowing individuals selling methamphetamine to escape higher penalties through the simple expedient of dividing a methamphetamine mixture into multiple quantities beneath the 200-grams-or-more threshold would ignore the plain meaning of the statute. A drug dealer could obtain a windfall in the form of the five-year mandatory minimum set by Code § 18.2-248(C) rather than the twenty-year mandatory minimum of Code § 18.2-248(H) simply because he possessed the substance in multiple bags rather than a single bag. Savvy drug dealers could routinely package their drugs beneath the statutory threshold to intentionally reduce their sentencing exposure. And any dealers who had already divided their product into smaller packaging for distribution to individual users could escape the enhanced penalties entirely. We conclude, based on the goal of the statute and the plain language used, that the legislature did not intend this inconsistent and illogical result. *See Chapman*, 500 U.S. at 461; *Bacon*, 991 F.3d at

---

[11] In *Lewis*, the Court analyzed the enhanced punishment provision of Code § 18.2-248(C)(4), structured similarly to subsection (H)(5) but requiring proof of lower threshold drug weights of either "10 grams or more of methamphetamine" or "20 grams or more of a mixture or substance containing a detectable amount of methamphetamine." *Lewis*, 76 Va. App. at 106-07 (quoting Code § 18.2-248(C)(4)). In conducting its analysis, the Court added up the weights of multiple bags of methamphetamine without discussion. *See id.* at 109-12 (remanding for resentencing because the evidence did not prove the purity of the substance necessary to meet the ten-grams-or-more threshold for an enhanced penalty).

843; *Lewis*, 76 Va. App. at 109; *Mason*, 16 Va. App. at 263. The 274.24 grams of methamphetamine mixture that Blanton possessed in five separate plastic bags within a single box was no less dangerous to the public than a single bag of the same weight would have been.

For all of these reasons, we reject Blanton's claim that the Commonwealth failed to prove he possessed 200 grams of a methamphetamine "mixture" with intent to distribute as required to support his conviction for violating Code § 18.2-248(H)(5) simply because the mixture was divided among five bags that he possessed at one time.

### B. Proof of Purity or Consistency of the Drugs

Blanton contends that the evidence failed to prove the methamphetamine mixture met statutory "consistency" requirements. He suggests that without such proof, the jury "could not reasonably find the entire mixture(s) included methamphetamine."

Under Code § 18.2-248(H)(5), the "Commonwealth must prove a 'pure' drug weight of [100] grams or more of methamphetamine, its salts, isomers, or salts of its isomers . . . or instead . . . prove [200] grams of a 'mixture' containing any detectable amount of methamphetamine." *See Lewis*, 76 Va. App. at 109 (quoting Code § 18.2-248(C)(4)) (noting this parallel language in the statute's ten- and twenty-gram provision). Based on the plain wording of the statute, if the weight equals or exceeds 200 grams, proof of "a[ny] detectable amount of methamphetamine" in the "mixture or substance" will suffice, and the Commonwealth is not required to prove the degree of purity. *See* Code § 18.2-248(H)(5); *cf. Shackleford v. Commonwealth*, 32 Va. App. 307, 328-29 (2000) (applying this principle to hold the evidence supported a finding that fourteen baggies contained a cocaine "'compound' or 'preparation'" as required for a conviction under Code § 18.2-248.01), *aff'd*, 262 Va. 196, 210 (2001).

Blanton acknowledges that the statute does not require a purity test for conviction under the 200-gram provision of Code § 18.2-248(H). He nevertheless challenges DFS's method of

testing the mixture—taking only a sample from each bag—which he contends did not prove that the entire bag contained methamphetamine. He argues that the statute requires proof of "consistency throughout the mixture(s)" and that failing to test "multiple crystals" risks "unjust and absurd outcome[s]."

Our established case law rejects this premise. This Court has held that "when a portion of an unknown substance is tested and confirmed to be an illegal drug, it is not unreasonable for the fact-finder to infer that the entire amount is the same illegal drug if the totality of the circumstances supports that inference." *Burrell*, 58 Va. App. at 434; *see also Chapman*, 500 U.S. at 458-59 (holding under identical language relating to LSD in 21 U.S.C. § 841(b)(1) that "[s]o long as [the mixture or substance] contains a detectable amount" of the drug, "the entire mixture or substance is to be weighed when calculating the sentence"). Here, the forensic scientist who performed the testing confirmed that each of the five baggies contained a mixture with a detectable amount of methamphetamine in it. *See United States v. Fitzgerald*, 89 F.3d 218, 223 n.5 (5th Cir. 1996), *cited with approval in Burrell*, 58 Va. App. at 434. The analyst further testified that the contents looked uniform and, in her expert opinion, all the contents were "consistent with what [she] would expect methamphetamine to look like." *See Shackleford*, 32 Va. App. at 328 (in applying Code § 18.2-248.01, relying in part on expert testimony that "all" bags of the cocaine "compound, derivative[,] or preparation" sampled looked "homogeneous"). Finally, the bags of methamphetamine themselves, as well as a photograph of them, were admitted at trial. The jury could reasonably conclude from all of the evidence that the substance Blanton possessed was "a mixture or substance containing a detectable amount of methamphetamine," which is all that the statute required. *See* Code § 18.2-248(H)(5).

Accordingly, we hold the trial court did not err by rejecting Blanton's challenge to the sufficiency of the evidence to prove the consistency of the methamphetamine mixture.

CONCLUSION

The evidence, including Blanton's admission to police, was sufficient to prove that he possessed 200 grams or more of a mixture containing a detectable amount of methamphetamine with the intent to distribute it in violation of Code § 18.2-248(H)(5). Further, the evidence proved his intent, the weight of the mixture and, to the extent required by the statute, the consistency of the mixture's contents. Consequently, Blanton's conviction is affirmed.

*Affirmed.*